## TOWNSEND v. BRIGGS.*

### No. 14,889; February 21, 1893.

32 Pac. 307.

**Assault.—In an Action for Personal Injuries It Appeared** that plaintiff entered defendant's shop and was ordered out; that, as plaintiff stepped back to the door, defendant struck him several times on the head with a mallet and with his fist, which caused plaintiff to fall on a cutting machine, and injure his left arm so that it had to be amputated. Held, that a verdict for plaintiff was justified by the evidence.

**Assault—Damages.—In Such Action, a Verdict of $9,000** was not so excessive as to show bias or prejudice.

**Witnesses.—It was not Prejudicial Error to Allow Plaintiff to** Answer the preliminary question: "You may state whether or not you have ever received any injury caused by . . . . defendant," when there follows, without objection, a narration of how the injury was received, and what was said and done by defendant.

**Damages for Personal Injuries.—It was Proper to Allow Plaintiff to Testify** that he had formerly lost two fingers on his right hand, and to show his hand to the jury, since they should know to what extent the loss of his left arm had deprived him of his earning power.

**Damages for Personal Injuries.—It was Proper for Plaintiff's Physician** to testify that he told plaintiff of his condition, and that it was necessary to amputate his arm, since the mental suffering re-

---

*For subsequent opinion in bank, see 99 Cal. 481, 34 Pac. 116.

sulting therefrom was attributable to defendant, if he was the cause of the injury.

**Witnesses—Cross-examination.—Where a Life Insurance Agent** was called to testify that the mortuary tables in an encyclopedia are in general use, and was not asked on his examination in chief to whom the tables applied, but stated on cross-examination that they applied only to insurable persons, it was not proper cross-examination to ask him "what insurable persons are."

**Witnesses.—Defendant's Questions: "Do You Know** his [plaintiff's] habits as to sobriety?" and "Do you know what his reputation is for sobriety?" were incompetent, as they called for the witnesses' knowledge at the time of the trial, which was two years after the injury was received.

**Assault—Damages.—In Such Action It was Proper to Charge** that, "if the jury find from the evidence that defendant, from malicious motives, and a wrongful disregard of" plaintiff's rights, "assaulted him and beat him wrongfully," and plaintiff was injured, "directly or approximately, then plaintiff is entitled to recover all damages he has suffered thereby," and the amount of damages is for the jury alone to determine.

**New Trial — Prejudice of Jurors.—Where a New Trial was** Asked for because two of the jurors were prejudiced against defendant, and affidavits are read as to statements made by the jurors showing their prejudice, which statements are denied by the jurors in counter-affidavits, the action of the court in denying the new trial will not be disturbed.

APPEAL from Superior Court, Ventura County; B. T. Williams, Judge.

Action by Charles Townsend against J. S. Briggs for personal injuries. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Brousseau & Thomas (Blackstock & Shepherd of counsel) for appellant; Barnes & Selby and H. L. Poplin for respondent.

BELCHER, C.—This is an action to recover damages for personal injuries received by the plaintiff. It is alleged in the complaint that on the eighteenth day of June, 1889, at San Buenaventura, in this state, the defendant wrongfully, wantonly and maliciously assaulted the plaintiff, struck him several blows on the head with a mallet, and also with his fist,

and beat, pushed, and knocked him over upon the knife of an apricot pitting machine, and thereby cut, bruised, and injured his head and left arm; that by reason of the injuries so received plaintiff lost his left arm, it being necessary to amputate the same above the elbow, and he was caused to suffer great bodily pain and mental agony, and was permanently disabled from doing any work or business, to his damage in the sum of $20,000, for which he asked judgment. The answer denied all the averments of the complaint, and alleged that the injuries complained of were received by the plaintiff through his own wrongful acts, carelessness, and negligence, while he was willfully and unlawfully trespassing upon the property of defendant, and not by or through any wrongful act of defendant. On the first trial of the case a verdict was returned in favor of the plaintiff for $500 damages. A motion for new trial was made by the plaintiff and granted by the court, and on appeal to this court the order was affirmed: Townsend v. Briggs, 88 Cal. 230, 26 Pac. 108. On the second trial, eleven special interrogatories were submitted to the jury and answered in favor of the plaintiff. A general verdict was also returned awarding the plaintiff $9,000 damages, for which sum judgment was entered. From this judgment, and an order denying his motion for new trial, the present appeal is prosecuted by defendant.

It was proved that defendant and one Leach had a shop in San Buenaventura, in which they were manufacturing and testing machines for pitting apricots and peaches; that there were three machines standing on the floor of the shop, two of them finished and one unfinished; that about 6 o'clock in the afternoon of June 18, 1889, the plaintiff entered the shop through an open front door to see one Barnard, an acquaintance of his, who was working there; that on entering plaintiff spoke to Barnard, and immediately stepped to the machine which was nearest the door, and commenced turning the wheel of it rapidly, and then stepped to another machine and turned the wheel of that; that the turning made a rattling, loud noise, which was heard by defendant in an adjoining room, and that he at once went into the shop, and told plaintiff to let the machines alone, and to get out from there, or he would pound his head; that plaintiff stepped back near the door and said, with an oath, "I would like to see you pound me"; that de-

fendant then seized a mallet and went up to plaintiff and struck him on the head with it; that the blow caused plaintiff to fall back against the door, but that he gathered himself up and stepped forward, and as he did so defendant again struck him with the mallet several times, and then struck him with his fist; and that, while plaintiff was moving about, he fell on one of the machines, and his left arm was so badly cut by the knife of the machine that to save his life it became necessary a few days later to amputate it above the elbow. It is claimed by appellant that the verdict was not justified by the evidence, and therefore that the judgment should be reversed. In answer to this claim it is sufficient to say that there was evidence clearly tending to support the verdict and to justify the answers to all of the special interrogatories. It is true that the testimony was in many respects conflicting, but under the well-settled rule in such cases the judgment cannot, in our opinion, be disturbed on this ground.

It is also claimed that the damages allowed were excessive. But the rule is that, where damages are asked for personal injuries committed from wanton or malicious motives, the measure of damages is left largely to the discretion of the jury, and courts will not disturb the verdict on the ground that the amount allowed is excessive, unless it is so disproportionate to the injury received as to make it clear that the jury must have been influenced by passion or prejudice. Here the injury sustained was serious and lasting, and we do not think it can be said that the sum awarded was an excessive compensation for it.

It is further claimed that the court committed several errors in its rulings upon the admission of evidence which were prejudicial to the defendant. The rulings complained of were as follows: After the plaintiff had taken the stand as a witness in his own behalf, his attorney said to him: "You may state to the jury whether or not you have ever received any injury caused by Mr. Briggs, the defendant in this action." The question was objected to as incompetent, because it called for a conclusion, an ultimate fact, to be determined by the jury, and not by the witness. The objection was overruled, and the witness answered, "I have received it." We see no prejudicial error in this ruling. The question was merely preliminary, and the answer was followed, without objection, by

a narration of the facts showing how the injury was received, and what was said and done by the defendant. The attorney also said to the same witness: ''You may state to the jury the condition of your other hand prior to and at the time you received this injury.'' The answer was: ''I have only two fingers and a thumb. I lost them in 1869.'' The attorney then said, ''Hold your hand up, and show to the jury.'' It was objected that the evidence sought was immaterial, irrelevant and incompetent, and it is argued that the purpose and effect of it was to excite the sympathy and prejudice of the jurors. But the plaintiff was entitled to have the jury informed as to his physical condition, and to what extent the loss of his left arm had deprived him of the means of earning a livelihood. For this purpose, as we understand it, the evidence was introduced, and it seems to have been competent and proper.

Dr. Bard was called as a witness for the plaintiff, and testified that he was a physician and surgeon, and was called upon to dress the plaintiff's wounds; that ten days after the injuries were received he, with other consulting physicians, decided that it was necessary that the arm should be amputated, and that on the next day he amputated it. He said: ''His condition at the time of the amputation was very critical. It was necessary to amputate the arm to save his life. He received proper medical attention and good nursing.'' He was then asked: ''Did you notify Mr. Townsend of his critical condition that you have mentioned?'' and the answer was: ''I did notify him of his critical condition, and obtained his consent to the amputation.'' The question was objected to by defendant as incompetent and immaterial, and it is now urged by his counsel that the doctor's expression of his opinion to his patient was incompetent as against the defendant, because, as they say, ''it may be that it had a depressing effect on the plaintiff's mind at the time, but such suffering cannot be attributed to the defendant.'' We see no merit in this objection. It was natural and proper for the doctor to tell the plaintiff of his condition, and that it had become necessary to amputate his arm; and the physical and mental suffering resulting therefrom was clearly attributable to the defendant, if he was the cause of the injury.

John H. Reppy was a witness for plaintiff, and testified that he had been engaged in the life insurance business as agent of the Mutual Life of New York for four years, and that the American Mortuary Tables were used by the leading life insurance companies; that he had compared the American Mortuary Tables, of which he had a copy, with the American Experience Tables, found in volume 3 of Johnson's New Universal Encyclopedia, so far as they related to the age of forty-six—the plaintiff's age at the time he received the injury—and that they were identically the same. Plaintiff then offered and read in evidence, over the objection of defendant, the page in the encyclopedia showing the probable duration of life at the age of forty-six to be twenty-three and eighty-one hundredths years. On cross-examination the witness stated that he had been a soliciting agent in the life insurance business, but had made no examinations of applicants for policies; and that the table referred to applied only to insurable persons. He was then asked, ''Can you tell us what insurable persons are?'' The question was objected to by plaintiff as not proper cross-examination, and the objection sustained. It is argued that this ruling was erroneous, because, if the witness had answered in the affirmative, and had said that plaintiff was not an insurable person, defendant would then have been entitled to demand that all his evidence be stricken out; and, if he had answered in the negative, defendant could properly have made the same motion. But the witness was called to prove simply that the mortuary tables found in the encyclopedia were in general use, and on his direct examination had been asked no questions as to whom the tables applied, or as to who were or were not insurable persons. And the general rule is that a witness cannot be cross-examined except as to facts and circumstances connected with matters testified to by him on his direct examination. There was no error, therefore, in the ruling of the court. The objection that the mortuary tables were not admissible in evidence is not insisted upon, nor could it be successfully. It had already been proved that plaintiff was in good health at the time he received the injury; and the rule seems to be general that, in an action to recover damages for an injury to a healthy person, caused by the negligence or wrongful act of the defendant, where the injury has resulted in the death of

the injured party, or in practically destroying his earning capacity, standard mortuary tables are admissible to show what was his probable duration of life, and thus to assist in determining what amount of damages would be reasonable and proper in the case: Gallagher v. Railway Co., 67 Cal. 16, 56 Am. Rep. 713, 6 Pac. 869; 15 Am. & Eng. Ency. of Law, p. 881, note 3, and cases cited.

When defendant was making his own case he asked one of his witnesses, "Do you know his [Townsend's] habits as to sobriety?" and another witness, "Do you know what his reputation is for sobriety?" Both questions were objected to as incompetent, and the objection sustained. The questions called for the knowledge of the witnesses at the time of the trial, which was two years after the injury complained of was received, and they were therefore clearly immaterial and incompetent.

It is next claimed that the court erred in giving to the jury certain instructions asked by the plaintiff. The first instruction complained of reads as follows: "If the jury find from the evidence that the defendant, from malicious motives, and a wrongful disregard of the rights of the plaintiff, assaulted him and beat him wrongfully, and in so beating the plaintiff was injured thereby, directly or approximately, then plaintiff is entitled to recover all damages he has suffered thereby, and the measure of damages and the amount thereof would be for you alone to determine under the evidence and instructions given by the court in this case." It is said that "this instruction assumes the fact that, if the defendant did assault the plaintiff, such assault was from malicious motives, and the wrongful disregard of the rights of the plaintiff." We fail to see any such assumption; on the contrary, the instruction seems properly to leave to the jury the determination, from the evidence, of all the matters referred to. Similar objections are made to other instructions, but we see no merit in them, and therefore pass them without special notice. The instructions asked by the defendant were all given, and when read, as they must be, in connection with those given at the request of the plaintiff, the law applicable to the case seems to have been fully, fairly and correctly stated.

Finally, it is claimed that a new trial should have been granted, because two of the jurors before whom the case was

tried were prejudiced against the defendant, and had made statements showing that they were wholly disqualified to act as jurors in the case. The jurors referred to were E. P. Cook and P. K. Miller, and the defendant, in an affidavit made by himself, stated that he "did not know before said jurors were called and sworn, touching their qualifications to serve as jurors in said case, or before they were so accepted as such, that they were so prejudiced against him. And that he had no means of knowing of such prejudice and ill-will." He did not state, and there was no proof, that the prejudice of the jurors, if any existed, was not known to him and his attorneys before the trial was concluded and the case submitted. Such proof, however, should have been made. But, waiving that, we do not think the action of the court in denying the motion for new trial can be disturbed on this ground. It is true that several affidavits were read in support of the motion, in which the affiants stated that in conversations with Cook and Miller, at times and places named, the latter had made statements to them, which, if true, clearly showed that they entertained prejudice and ill-feeling against Briggs. But, on the other hand, counter-affidavits made by Cook and Miller were read in which they denied that at the times or places named, or at any time or place, or at all, they had ever made to the affiants, for defendant, or in conversation with them, the statements charged, or any statements of like or similar import, nature, substance or character. Counsel for appellant suggest that the counter-affidavits are insufficient, because they only deny that the affiants ever made the statements charged to or in conversation with the affiants on the other side. And it is said that the statements may have been made in the hearing of, if not to, or in conversation with, the parties deposing to them. But, in our opinion, there was a real and substantial conflict as to whether the said statements or any like statements were ever made, and, after carefully reading all of the affidavits, we cannot say that the conclusions of the court below, as shown by its action in denying the motion, were not reasonable and proper. We advise that the judgment and order appealed from be affirmed.

We concur: Vanclief, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.